# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# COVINGTON

**CRIMINAL ACTION NO. 05-68-DLB**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**


**VS.**                            **MEMORANDUM OPINION & ORDER**


**MICHAEL L. BLACK**                                                    **DEFENDANT**

*********************************

This matter is currently before the Court on Defendant Black's Motion to Quash Search Warrant and to Suppress Evidence Seized Pursuant Thereto. (Doc. # 39). The government has filed its response in opposition to the Motion. (Doc. # 40).

On December 21, 2005, the Court conducted a pretrial conference during which the Court heard all pending motions, including the above-referenced motion. The United States was present through counsel, Assistant United States Attorney Laura K. Voorhees. Defendant Black was present, represented by Gary J. Sergent. Although conceding that he lacks standing to contest the search, Defendant Lofton was present, represented by Thomas Lyons. Upon the agreement of counsel, and determining that a further evidentiary hearing would be necessary to adjudicate the motion, the Court continued the hearing until January 12, 2006.

On January 12, 2006, the Court conducted an evidentiary hearing on the motion to suppress. The United States was present through counsel, Assistant United States Attorney Laura K. Voorhees. Defendant Black was present, represented by Gary J.

Sergent.  Defendant Lofton was also present, represented by Thomas Lyons.

At the conclusion of the hearing, Defendant Black was provided with the opportunity to submit a supplemental memorandum relating to whether the conditions of probation were in effect on June 22, 2005.  On January 16, 2006, Defendant Black's counsel filed his supplemental memorandum.  (Doc. # 59), and on January 17, 2006, the government filed its response thereto.  (Doc. # 60).  The motion, having now been fully briefed, is ripe for the Court's review.

## I.    Issues Raised

In his motion to quash/suppress, Defendant Black challenges the legality of a state search warrant[1] which authorized the search of a residence identified as 318½ Plum Street, Maysville, Kentucky.  More specifically, Black challenges the conditions of his shock probation, argues that the search warrant was facially deficient and the affidavit lacked the requisite probable cause necessary for its issuance, and further challenges the lawfulness of his warrantless arrest and the subsequent use of the fruits of that warrantless search in the search warrant affidavit.  Black also argues in his supplemental memorandum that because his case was on direct appeal when the Order granting shock probation was entered, that Order should have been stayed pending the appeal pursuant to Kentucky Criminal Rule 12.76(4).[2]

---

[1]  A copy of the challenged state search warrant and supporting affidavit have been made part of the record as Government Exhibit Three admitted during the evidentiary hearing.

[2]  Rule 12.76(4) provides that "[a]n order placing the defendant on probation shall be stayed if an appeal is taken."

2

During the December 21, 2005 hearing,[3] the parties agreed that although Black was challenging the sufficiency of the supporting affidavit, an evidentiary hearing on the motion to quash/suppress was required because Black was challenging his June 22, 2005 arrest and subsequent discovery of marijuana during the search incident to that arrest.

## II.   Findings of Fact

On January 12, 2006, the undersigned conducted an evidentiary hearing wherein two witnesses testified.  More particularly, the government called Tim Fegan and Keith Fetters.  The Court also took judicial notice of K.R.S. § 533.050, which permits a state probation officer, or peace officer acting at the direction of the probation officer, who sees an offender violate the terms of his probation, arrest the offender without a warrant.  K.R.S. § 533.050(1)(b).  The Court also admitted a copy of the Mason County Circuit Court docket sheet for Defendant Black's 03-CR-00025 criminal case and took judicial notice of the entries in that docket sheet.[4]

After considering the testimony, the credibility of the witnesses, and the exhibits admitted during the hearing, the Court makes the following factual findings:

1.  On February 13, 2004, Defendant Black was sentenced by Mason Circuit Judge John McNeill.  The Judgment was entered on February 17, 2004.

2.  On May 4, 2004, Black's attorney in state court filed a motion for shock probation. On May 14, 2004, that motion was denied.  On July 23, 2004, Black's attorney filed a

---

[3]  Black's counsel also acknowledged during the December, 2005 hearing that he was not raising a *Franks v. Delaware,* 438 U.S. 154 (1978) challenge and conceded that no oral or other supplemental information had been provided to the state court judge who signed the search warrant.

[4]  This docket sheet has been made part of the record as Docket Entry No. 55.

second motion for shock probation.  On August 6, 2004, a hearing was scheduled on Black's motion for August 27, 2004.  After a hearing, Judge McNeill granted Black shock probation.  Pursuant to the Order granting shock probation, further execution of Black's sentence was suspended and he was placed on probation under the supervision of the Division of Probation and Parole for a period of 5 years.

3.  During the August 27, 2004 shock probation hearing, a video tape of which has been provided to the Court and made part of the record pursuant to this Order, Judge McNeill discussed the shock probation motion with counsel and placed Black on probation for five years.  However, upon being advised that Black had been charged in New York with state weapon and marijuana charges, Judge McNeill warned Black that if he was convicted of those charges, he would likely revoke Black's probation.  Although there was some limited discussion of Black's direct appeal of his Mason County conviction, there was no request by Black's attorney to stay the execution of the five year term of probation pending the appeal.  Additionally, the Mason County docket sheet admitted during the hearing reflects neither a motion nor order to stay Black's probation pending appeal.

4.  On August 30, 2004, Defendant Black met with Probation and Parole Officer Lisa Yeary and signed the conditions of his supervision, acknowledging the conditions.  These conditions included, but were not limited to:

> C    I agree that I may be subject to search and seizure if my officer has reason to believe that I have illegal drugs, alcohol, volatile substances, or other contraband on my person or property;

> C    I understand that I shall not enter any place where alcoholic beverages are sold as a primary commodity;

4

C      I shall avoid associating with any convicted felon.

*See* Conditions of Probation, admitted as Government Exhibit One during the hearing, at ¶¶ V(A), V(C), and VI(G).

5.  The conditions of supervision also stated that "I have read or had read to me, the above conditions of my release that I must fully observe while under active supervision. I fully understand and accept the above conditions and realize that any violation shall be reported and failure to abide by these conditions can be grounds for revocation of my release."

6.  At approximately 9:00 a.m. on June 22, 2005, Detective Tim Fegan with the Buffalo Trace Narcotics Task Force, Maysville, Kentucky, received information from Maysville Police Detective Ken Fuller, who had been informed by a reliable cooperating informant that Michael Black, a convicted felon, was concealing a large quantity of cocaine at the residence of Steve Lofton, Jr., also a convicted felon, located at 318 ½ Plum Street, Maysville, Kentucky.

7.  At approximately 1:30 p.m. that same date, Detective Fegan set up surveillance in the area around 318 ½ Plum Street and the Dutch Inn, a bar which is at the corner of Plum Street and Fourth Street in Maysville.  According to Detective Fegan, the Dutch Inn is primarily a bar, but it also sells package liquor.  The Dutch Inn is approximately 200 feet away from 318 ½ Plum Street.

8.  While conducting surveillance at approximately 2:00 p.m., Fegan observed Black and Lofton and two other unknown males exit a grey/black Suburban parked in the Dutch Inn parking lot.  Fegan was personally familiar with both Black and Lofton from his work in other cases and knew that Black was on shock probation.  As they exited the Suburban,

5

Fegan observed Black carrying an orange duffel bag and a black duffel bag. Both bags were later seized from 318 ½ Plum Street during the execution of the state search warrant. Fegan thereafter observed Black take the two bags into 318 ½ Plum Street and Lofton leave with the other two men.

9. Soon after entering the residence at 318 ½ Plum Street, Fegan observed Black exit the apartment and enter the Dutch Inn. Thereafter, Fegan noticed subjects going into and coming out of the bar quickly, but not staying long enough to have a drink. Based on his training and experience, and knowledge that the Dutch Inn was a known location for drug trafficking, Fegan believed Black was engaging in drug transactions.

10. Over approximately the next two hours, Fegan observed Black make approximately three trips from 318 ½ Plum Street to the Dutch Inn, leading him to suspect that Black was engaged in drug trafficking.

11. After receiving the information in Finding No. 6 and making the observations set forth in Findings Nos. 8-10, at approximately 4:00 p.m. Fegan contacted Probation and Parole in Maysville. Fegan spoke with Probation and Parole Officer Paul Thayer and advised him that he had observed Black going into the Dutch Inn. Thayer told Fegan that he would speak with his supervisor and get back with him.[5]

12. Upon receiving the call from Fegan, Thayer spoke with Keith Fetters, a 16 - year veteran of state probation and parole, about what he had learned.

13. Fetters contacted Judge McNeill and advised the judge of the alleged violations of probation. Judge McNeill told the officers to arrest and detain Black on the violation.

─────────────────────

[5] Defendant Black's regular probation officer was on vacation on June 22, 2005.

6

14. After receiving the telephone call from Fegan and speaking with Judge McNeill, Fetters and Thayer proceeded to the Maysville Police Department to make arrangements for the arrest.

15. Sometime thereafter Detective Fegan observed Black make another round trip from bar to the residence. Upon seeing Black enter the Dutch Inn once again, Fegan called the officers and advised them of his observations. Officers Fetters and Thayer, accompanied by three Maysville police officers, proceeded to the Dutch Inn. Upon their arrival, they entered the Dutch Inn and Fetters personally observed Black inside.

16. At approximately 5:05 p.m., Black was arrested on the probation violation by Fetters.

17. A pat down search by Lt. Rice incident to that arrest[6] revealed approximately seven ounces of marijuana in Black's pocket. Black was then taken into custody.

18. Believing that he had probable cause for a search warrant, after having observed Black's behavior going back and forth between 318 ½ Plum Street and the Dutch Inn, and the discovery of the large quantity of marijuana on Black's person, Detective Fegan proceeded to the County Attorney's office to assist Assistant County Attorney Kate Hendrickson in preparing an affidavit and application for a state search warrant for 318 ½ Plum Street.

19. At approximately 5:09 p.m., Attorney Hendrickson began preparing the affidavit

---

[6] Although the arrest was "warrantless" insofar as it was not made pursuant to an arrest warrant signed by a judge, the arrest had been authorized by Judge McNeill's oral statement to probation after McNeill was advised of the alleged violation. This authorization is corroborated by the Uniform Citation signed by Probation and Parole which indicates that the probation officer had notified Judge McNeill of the alleged violation and Judge McNeill advised the officer to arrest and detain Black for the probation violation. *See* Government Exhibit Four admitted during the hearing.

for the search warrant.  Government Exhibit Three.  Attorney Hendrickson began preparing the search warrant a short time later, at approximately 5:15 p.m.  *Id.*

20.  After determining that the state district judge was unavailable, Detective Fegan called Judge McNeill and asked him if he would be available to review an application for a search warrant.  McNeill agreed and awaited Fegan's arrival at the courthouse.

21.  At approximately 5:30 p.m., Detective Fegan's signature was notarized by Attorney Hendrickson.

22.  After the signature was notarized, Fegan proceeded to the judge's chambers.  After reviewing the application and affidavit for the search warrant, Judge McNeill signed the search warrant at approximately 5:40 p.m.  Although he signed and dated the search warrant at 5:40 p.m., Judge McNeill did not affix the time he signed on the warrant itself.

23.  After obtaining the search warrant, Fegan and others executed the search warrant and seized quantities of marijuana, powder and crack cocaine, as well as drug paraphernalia from the 318 ½ Plum residence.

24.  An inventory of the items seized during the execution of the search warrant was prepared by Detective Fegan that same evening.  Although Fegan signed and dated the inventory, he did not affix the time he signed the inventory.  The return to Judge McNeill was not made until the following day as the Court was closed for the evening on June 22, 2005.

25.  Because Probation and Parole and the jail informed Fegan that Black would be held on the probation violation warrant and would not be released on the evening of June 22, 2005, Fegan did not issue a citation to Black for the state drug offenses until the following morning.

26.  On June 23, 2005, Detective Fegan swore out a Criminal Complaint charging Black with trafficking in Marijuana and Cocaine and requested an arrest warrant.  *See* Government Exhibit Five.  At approximately 11:08 a.m., an arrest warrant was signed by Trial Commissioner James Clarkson.  Although the date listed was May 23, 2005, that date was simply an error.  The Trial Commissioner inadvertently dated the warrant as May 23, 2005, but timed it correctly.

27.  At approximately 3:25 p.m.[7] on June 23, 2005, Detective Fegan served the warrant on Black at the Mason County Detention Center.

**III.   Analysis**

**A.   Defendant Black was properly placed on shock probation on August 27, 2004 by Mason Circuit Judge John McNeill.**

Black argues that because the Order granting shock probation is silent regarding the date the motion for shock probation was made, the Order is deficient.  Black also argues that because the shock probation motions were not timely heard, the Order granting Shock Probation is defective and void.  The Court disagrees.  Upon review of the Mason Circuit Court docket sheet, the Court concludes there was no error in the timing of Black's placement on shock probation.

---

[7] Government Exhibit Six admitted during the hearing correctly shows that the violation occurred on June 22, 2005, at 6:00 p.m., that being the approximate time the officers executed the search warrant and found the cocaine and marijuana inside 318 ½ Plum Street.  That citation also correctly shows the date of the arrest as June 23, 2005, at 3:25 p.m., which is the day and time the warrant was served on Black at the jail for trafficking.

9

As evidenced by Findings Nos. 1-2 herein, Black's state defense counsel moved for shock probation on two occasions, May 4, 2004 and July 23, 2004. Both of these dates were more than 30, but less than 180 days after the date of sentencing. The timing of the motion thus complied with K.R.S. § 439.265(1) which states, in part:

> ... [A]ny Circuit Court may, upon motion of the defendant made not earlier than thirty (30) days nor later than one hundred eighty (180) days after the defendant has been incarcerated in a county jail following his conviction and sentencing ... suspend the further execution of the sentence and place the defendant on probation upon terms the court determines.

The first motion for shock probation was filed on May 4, 2004, heard on May 14, 2004, and denied on May 14, 2004. *See* Doc. # 55. The second motion was filed on July 23, 2004 and heard by Judge McNeill on August 27, 2004, after which he granted Black's motion for shock probation. *Id.* Thus, both motions were heard within the statutory time frame of K.R.S. § 439.265(2) which provides:

> The court shall consider any motion filed in accordance with subsection (1) of this section within sixty (60) days of the filing date of that motion, and shall enter its ruling within ten (10) days after considering the motion.

For these reasons, there is no error, technical or otherwise, in the timeliness of the Order granting Black shock probation.

The Court also rejects Black's argument that because his case was on direct appeal to the Kentucky Court of Appeals, the Order granting shock probation was stayed pending appeal pursuant to Kentucky Criminal Rule 12.76(4). Based on Black's tortuous logic, although K.R.S. § 439.265 did provide a basis for releasing him on shock probation, any conditions of his probation should have been stayed during his direct appeal. Taking Black's argument to its logical conclusion, although he was on probation, he would not be subject to any conditions of that probation during the pendency of the appeal, a simply

10

illogical result.

Despite the language of Rule 12.76(4), all parties, including Black and his state defense counsel, probation officer and the state Court, operated under the assumption that the order granting shock probation was valid and effective immediately.  For example, Black reported to probation as directed on August 30, 2004 and signed the conditions of supervision.  State Probation and Parole supervised Black after that date up to and including June 22, 2005, and was aware that he was not permitted inside bars as a condition of his probation.  Finally, Judge McNeill believed Black's probation would be effective immediately as evidenced by his statement during the August 27, 2004 hearing that he would entertain a motion to revoke probation if Black was convicted of any of the pending New York state charges.  *See* Court Exhibit One.  Judge McNeill was also aware of Black's bar restriction as evidenced by his statement to Probation Officer Fetters that they should arrest and detain Black on the probation violation.

Moreover, there was no motion by Black's state defense attorney to stay shock probation during the pendency of the direct appeal and no discussion during the hearing of any stay.  *See* Finding No. 3.  The Court surmises that the reason there was no such motion or discussion was because Black wanted to get out of jail as soon as possible and did not want to jeopardize his chances of shock probation by arguing on the one hand that he should receive shock probation, and on the other hand that any shock probation, and conditions thereof, should be stayed pending his appeal.  If he had done so in this case, Judge McNeill may not have granted his request for shock probation.

When faced with the option of staying in jail pending his appeal or agreeing to the terms and conditions of his shock probation, Black, of course, pursued the non-custodial

option of shock probation.  After all, it was Black who requested to be released on shock probation.  By filing the motion for shock probation after his case was pending on appeal, Black expressly submitted himself to the jurisdiction of the Mason Circuit Court and the conditions of supervision which were placed upon him and to which he expressly agreed.

For these reasons, the Court concludes that Black was properly placed on shock probation on August 27, 2004 and based on the facts of this case, Kentucky Criminal Rule 12.76(4) did not operate as a matter of law to stay the conditions of Black's shock probation during the pendency of his appeal.

**B.     Defendant Black's conditions of shock probation on June 22, 2005 included those conditions signed by Black on August 30, 2004 and admitted during the evidentiary hearing as Government Exhibit One.**

In an effort to invalidate the conditions of probation signed by him on August 30, 2004, Black argues that because the August 27, 2004 Order (Defendant Exhibit One) granting him shock probation does not incorporate by reference the Conditions of Supervision set forth in Government Exhibit One, he was not subject to those conditions on June 22, 2005 when he was arrested, searched, and found to be in possession of marijuana.  As a result, Black contends his arrest was unlawful and the fruits of the arrest cannot be considered by the Court in its probable cause analysis.  Black argues that "[d]ue process requires that the conditions of probation be incorporated into the Order granting probation so that a defendant is afforded proper notice."  Doc. # 59 at p. 3.  In support of his due process argument, Black cites two cases, *Douglas v. Buder*, 412 U.S. 430 (1973) and *Tittsman v. Black*, 536 F.2d 678 (6th Cir. 1976).  Both are easily distinguishable from this case.

12

In *Douglas*, the petitioner had been placed on probation with a condition that he report all arrests without delay to his probation officer. He was thereafter involved in a multi-car accident and issued a traffic citation for driving too fast for existing conditions. The judge revoked his probation based on the premise that Douglas had failed to promptly report an arrest. The Supreme Court, in reversing the Missouri Supreme Court, reviewed Missouri law and concluded that receiving a citation is not an arrest, and concluded that the judge's finding that Douglas had violated the conditions of his probation by failing to report all arrests without delay was "so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment." 412 U.S. at 432.

In *Tittsman*, the petitioner was originally sentenced to five years imprisonment. Approximately three months later, petitioner's motion for probation was granted and he was placed on five years probation in absentia. Soon after being released on probation, petitioner was arrested and charged with new criminal conduct. Petitioner's probation was revoked and he was ordered to serve five years imprisonment. In his habeas petition, Petitioner argued, in relevant part, that because he had been uninformed of his probationary status and the conditions thereof, his due process rights had been violated by the revocation. The Sixth Circuit disagreed, sustaining the revocation of probation against petitioner's constitutional challenge. In so concluding, the Court stated:

> [W]e do not imply that probation may be constitutionally revoked for violating any condition of probation regardless of whether the probationer had notice of his probationary status and of the conditions thereof. Where an act or omission, otherwise lawful, is reprehensible only because it violates a condition of probation, such as failing to report arrests, failing to report personally and to report changes of address to government officials... then notice of the probationary status and the conditions thereof would be constitutionally required to underlie probation revocation based on violating those conditions.

13

536 F.2d at 682 (citations omitted).

In this case, it is undisputed that Black was present for the August 27, 2004 shock probation hearing wherein Judge McNeill granted him shock probation for a term of five years. *See* Court Exhibit One. It is further undisputed that on August 30, 2004, Black reviewed the conditions of his supervision with his probation officer and signed those conditions acknowledging his understanding of those conditions. *See* Government Exhibit One. Moreover, there can be no dispute that on June 22, 2005, Black was present inside the Dutch Inn, a place where alcoholic beverages were sold as a primary commodity. Thus, unlike the case in *Douglas*, there was ample evidence to support a violation herein. Additionally, unlike the case in *Tittsman*, Black knew of his probationary status and had knowledge of the conditions he signed on August 30, 2004. For these reasons, Black's reliance on both cases is misplaced.

Simply put, when Black was placed on shock probation on August 27, 2004, he knew he was to report to probation and be under their supervision for five years. Black reported to probation and parole three days later and went over the conditions of his probation with his probation officer. There is no evidence that Black was unaware that he was prohibited from entering a bar as a condition of his probation. As a result, his due process argument fails.

Moreover, Black cites no authority requiring the written Order granting shock probation to refer to or incorporate by reference separate conditions of supervision. If the Court were to adopt Black's argument on this issue, then the conditions knowingly signed by Black on August 30, 2004 would be meaningless. Black would have the Court conclude that although Judge McNeill placed Black on shock probation to be supervised "under the

14

supervision of the Division of Probation and Parole for a period of 5 years," and that Order required Black to "report to the probation officer as directed," the only conditions of his shock probation were those set forth in Judge McNeill's August 27, 2004 Order. The Court disagrees.

Although imposed at different times, in all other respects "shock" probation is the same as probation ordered as part of an offender's original sentence.[8]   *See Wilson v. Commonwealth*, 839 S.W.2d 17, 19 (Ky. Ct. App. 1992). In Kentucky there are two ways to place a person on probation: probation during original sentencing pursuant to K.R.S. § 533.020(1), and shock probation following sentencing pursuant to K.R.S. § 439.265. In *Wilson*, the Kentucky Court of Appeals explained that shock probation is a form of probation distinguishable only because the probation may be granted only during a brief period following incarceration.

Moreover, because Kentucky's shock probation statute, K.R.S. § 439.265, expressly states that it is subject to K.R.S. Chapters 500 to 534, the provisions of K.R.S. § 533.030 apply to shock probationers and probationers alike. The only statutory factor that distinguishes shock probation is the timing of the circuit court's Order. K.R.S. § 533.030(5) provides:

> When a defendant is sentenced to probation or conditional discharge, he shall be given a written statement explicitly setting forth the conditions under which he is being released.

By enacting K.R.S. § 533.030(5), the Kentucky legislature required probationers to be

---

[8] In that respect the Court disagrees with the government's statement in its supplemental response that "[t]he law and rules differ regarding probation and shock probation." (Doc. # 60 at p. 1).

advised in writing of the conditions of supervision.

Based on the statutory framework of K.R.S. Chapters 439 and 533, the Court concludes that the Conditions of Supervision signed by Black on August 30, 2004 (Government Exhibit One) were effective upon his signature. While there are several other conditions contained in the Order granting shock probation (Defendant Exhibit One), those conditions do not trump or supersede the conditions of supervision signed by Black on August 30, 2004.

Additionally, the fact it was Black's probation officer, rather than Judge McNeill, who reviewed the conditions of his supervision with him is of no legal consequence. Moreover, in view of K.R.S. § 533.030(5), there is no requirement that the Order granting shock probation incorporate by reference Black's conditions of supervision. Judge McNeill's August 27, 2004 Order required Black to report to the probation officer as directed. Defendant Exhibit One at p. 2. Three days later, Black reported to the probation office and was provided with a written statement of his probation conditions as required by K.R.S. § 533.030(5).

For all of these reasons, the Court specifically rejects Black's argument that the only conditions in effect on June 22, 2005 were those contained in Judge McNeill's August 27, 2004 Order. Rather, the Court concludes that the conditions of supervision signed by Black on August 30, 2004, including those specified in Finding Nos. 4-5 herein, were  in effect on the date of his arrest and provided a basis for his arrest for violating the terms of his probation.

16

**C.    Defendant Black's arrest for violating the conditions of his state probation was lawful and thus, the fruits of the search incident to that arrest are properly considered by the Court in determining whether the affidavit contains sufficient probable cause.**

In view of the Court's conclusions in Sections III(A) & (B) herein, it is undisputed that Black's probation prohibited him from entering any place where alcoholic beverages are sold as a primary commodity.  It is further undisputed that the Dutch Inn in Maysville is a bar where alcoholic beverages are sold as a primary commodity.

Detective Fegan personally observed Black enter the Dutch Inn several times throughout the afternoon of June 22, 2005.  Finding Nos. 9, 10, and 15.  Fegan and Probation Officer Fetters also personally observed Black inside the Dutch Inn at approximately 5:05 p.m. on June 22, 2005.  Finding No. 15.  Based on these undisputed observations, Fetters had the lawful authority to arrest Black without a warrant for violating the terms of his probation.  *See* K.R.S. § 533.050(1)(b).

Because the warrantless arrest was lawful, the search of Black's person was permissible as incident to that lawful arrest.  *Chimel, v. California*, 395 U.S. 752, 762-63 (1969) Thus, the fruits of that search, to wit, approximately seven ounces of marijuana, were validly seized pursuant to the lawful search, and may be properly considered in determining whether the search warrant affidavit contained sufficient probable cause for its issuance.

**D.    The affidavit in support of the search warrant signed by Mason Circuit Court Judge McNeill set forth sufficient probable cause**.

As a preliminary matter, the Court notes that "a state search warrant being challenged in a federal court must be judged by federal constitutional standards." *Elkins v.*

17

*United States,* 364 U.S. 206 (1960); *United States v. McManus,* 719 F.2d 1395 (6th Cir.1983).   The Fourth Amendment of the U.S. Constitution protects its citizenry from unreasonable searches and seizures.   More particularly, it provides that:

> ... [N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation....

U.S. CONST. amend.  IV.

In *United States v. Pinson,* 321 F.3d 558 (6th Cir. 2003), the Sixth Circuit reiterated certain fundamental principles that district courts must apply when defendants argue that evidence seized pursuant to a search warrant must be suppressed because the affidavit did not establish probable cause:

> A magistrate judge's determination of probable cause is given great deference by a reviewing court.  *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 907 (2000).  Affidavits must be judged based on the "totality of the circumstances" and answer "the commonplace practical question [of] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion."  *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990).  Where, as in the present case, oral testimony was not presented to the issuing state court judge,[9] the existence of probable cause to support a warrant must be ascertained exclusively from the four corners of the underlying affidavit.  *See e.g.*, *Whiteley v. Warden*, 401 U.S. 560, 565 n. 8 (1971); *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir. 1996).  The affidavit is to be judged on the adequacy of what it contains, not

---

[9]  Although Detective Fegan did indicate that he spoke with Judge McNeill while he was obtaining the search warrant, there is no indication that Fegan supplemented the written affidavit with other averments in an effort to obtain the warrant.

on what it lacks, or on what a critic might say should have been added. *Pinson, supra*, 321 F.3d at 562 (*citing Allen, supra*, 211 F.3d at 975).  To the extent Defendant seeks to go beyond the four corners of the affidavit in challenging the sufficiency of probable cause, he may do so *only* by making a substantial showing that the affidavit contains deliberate falsehoods or reckless disregard for the truth, without which the affidavit would be an insufficient basis for the warrant. *Franks v. Delaware*, 438 U.S. 154 (1978); *United States v. Jenkins*, 728 F.2d 396, 397 (6th Cir. 1984).  Because Black has made no such showing in this case, the Court will not go beyond the four corners of the affidavit in reviewing probable cause.

In the case *sub judice*, the affidavit in support of the search warrant contained the following averments:

> On June 22, 2005, at approximately 9:00 a.m., Affiant received information from/observed:  Det. Fuller who was informed by a reliaable (sic) confidential witness that Michael Black, a convicted felon, was concealing a large a quantity of cocaine at the residence of Steve Lofton, Jr., also a convicted felon, which has video cameras on the outside of the residence.

> Acting on the information received, Affiant conducted the following independent investigation: Michael Black was observed carrying two large duffle bags, one black and one orange into 318½ Plum Street, Maysville, KY.  Mr. Black was making constant trips from the apartment at 318½ Plum Street to the Dutch Inn where affiant observed more than normal traffic going into the Dutch Inn for a very short period of time, not sufficiently long to have a drink.  Mr. Black is a convicted felon currently on shock probation and is under conditions of no contact with other felons or to be in alcohol establishments, confirmed by probation and parole. Steve Lofton, Jr. who is the lessee of 318½ Plum Street, Maysville, where Michale (sic) Black transported the duffle bags and where he was in and out of all afternoon is also a convicted felon.  Mr. Black was stopped and had marijuana on his person upon arrest.

(Government Exhibit 3 at p. 2)

19

Upon reviewing the four corners of the affidavit in this case, the Court concludes that the affidavit does contain adequate probable cause for its issuance.  Probable cause is established by the following facts:

C      the information relayed to affiant by Det. Fuller that a reliable witness[10] had advised him that Black was concealing a large quantity of cocaine inside the residence of Lofton;

C      the presence of video cameras outside Lofton's residence;

C      affiant's own observations of Black after speaking with Detective Fuller on June 22, 2005, including –

C      Black carrying two large duffle bags into 318½ Plum Street, determined by affiant to have been leased by Steve Lofton, Jr., the same person identified by the confidential witness in whose residence Black was allegedly concealing cocaine;

C      Black making "constant trips" from the apartment at 318½ Plum Street to the Dutch Inn;

C      the fact that Black was "in and out" of the apartment at 318½ Plum Street "all afternoon";

_____

[10] Although the basis for the confidential witness' reliability is not set forth in the affidavit, that fact does not preclude consideration of the witness' observations.  Rather, it is a factor to be considered in light of the other information contained in the affidavit.  As stated in *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004), "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information."  While additional details about the confidential witness may have been helpful, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."  *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc).

C      the heavy short-term traffic at the Dutch Inn while Black was inside the
       establishment; and

C      the fact that Black had marijuana on his person when arrested.

These facts, when considered in their totality, were sufficient for the issuing judge
to conclude that there was a fair probability that contraband or evidence of a crime would
be found inside 318½ Plum Street, Maysville, Kentucky.  Having reviewed the affidavit, the
Court is satisfied that the state court judge had a substantial basis for concluding that
probable cause existed.  *See Illinois v. Gates*, 462 U.S. at 238-39.

Because Black was personally observed by Detective Fegan on June 22, 2005
coming from 318½ Plum Street and going to the Dutch Inn several times that afternoon,
and was arrested in possession of marijuana a short time later that same date, there is a
fair probability that contraband would be found inside 318½ Plum Street.  For all of these
reasons, the Court concludes that Defendant's probable cause challenge to the affidavit
in this case is without merit.

### E.   The failure of the affiant to identify the exact times of the averments in the affidavit does not make the warrant facially deficient.

In his supporting memorandum, Defendant relies upon several cases, including
*United States v. Boyd*, 422 F.2d 791 (6th Cir. 1970) and *Rosencranz v. United States,* 356
F.2d 310 (1st Cir. 1966) for the proposition that the warrant is invalid because affiant failed
to include information relating to the dates and times he received information which formed
the basis for his affidavit.  More particularly, Black argues that at a minimum, affiant was
required to indicate when Det. Fuller received the information from the confidential witness
and/or when affiant may have made his personal observations.  According to Black, in the

absence of such temporal information, the warrant is facially deficient. The Court disagrees.

The state court judge's reliance on information which, at the most, was several hours old, is not, as Black suggests, tantamount to the issuance of a warrant on the basis of undated averments. Thus, the present case is easily distinguishable from *Boyd* and *Rosencranz*. In *Rosencranz*, the court concluded "that a combination of undated conclusory information from an anonymous source and an undated general allegation of personal observation by the affiant, with no other reasonably specific clues to the time of their happening, is inadequate." 356 F.2d at 318.

In this case, the affidavit contained the date and time (June 22, 2005 at 9:00 a.m.) the affiant received the information from Det. Fuller. While the affidavit did not identify when the cooperating witness may have observed Black concealing quantities of cocaine at the location, it nonetheless did contain a starting date and time for the averments. The affidavit also stated that "[a]cting on the information received, affiant conducted further investigation...," which based on how it was phrased, had to have occurred <u>after</u> receiving the information from Det. Fuller. Moreover, given that the affidavit refers to Black being "in and out" of 318½ Plum Street "all afternoon" and contains a notarization of affiant's signature on June 22, 2005 at 5:30 p.m., it is obvious to the Court that affiant's observations occurred on June 22, 2005. That would include the fact that Black had marijuana on his person when arrested on that same date.

The averments in the affidavit herein provided the issuing judge a reasonably specific clue as to the time of affiant's observations, which is much more specific than was the case in *Boyd* and *Rosencranz*. Finding that this warrant is valid despite the lack of a

specifically delineated date or time of affiant's personal observations does not "open the door to unsupervised issuance of search warrants on the basis of aging information." *Rosencranz,* 356 F.2d at 316-17.  As the affidavit in this case does not suffer from the same temporal deficiencies as in *Boyd* and *Rosencranz*, Black's reliance on those cases is misplaced.

> **F.     The failure of the issuing judge to affix the time of his signature or affiant's failure to affix the time of his signature on the warrant's return does not invalidate an otherwise sufficient search warrant.**

As part of his attack on the propriety of the search warrant, Black argues that the issuing judge's failure to sign the warrant is fatal.  The Court disagrees.

The fact that the issuing judge did not affix the time he signed the search warrant does not invalidate the warrant.  Not only does Black fail to cite any authority for his argument, a point reiterated during initial argument on the motion to suppress, the Court's own research reveals no such case law.  Moreover, there is no argument that the officers searched 318½ Plum Street before the warrant was signed.

Neither the Fourth Amendment nor Rule 41 of the Federal Rule of Criminal Procedure, requires an issuing judge to place the time he signs the search warrant on the face of the warrant in order to make the warrant constitutionally valid.  While it may be common practice for issuing judges to do so, the Constitution does not so require.  In fact, the Court's review of Rule 41 reveals only one occasion when the judge must enter on its face the exact time the warrant was issued.  *See* Rule 41(e)(3)(D),[11] Fed. R. Crim. Proc.

---

[11]  Rule 41(e) provides in relevant part:

(e)     Issuing the Warrant.

involving the issuance of a warrant by telephonic or other means.  It is undisputed that that method was not used during the issuance of the search warrant in this case.

Additionally, any alleged failure of Detective Fegan to comply with Kentucky Rule of Criminal Procedure 13.10 does not invalidate the warrant.  Rule 13.10(3) provides that an officer executing a search warrant shall make a return within a reasonable time of its execution and the return shall "show the date and hour of service."   In this case, the inventory of items seized pursuant to the warrant was signed by Detective Fegan the evening of June 22, 2005.  Finding No. 24.  However, it is undisputed that the return does not show the hour of service.  Affiant's failure to comply with Rule 13.10(3) by listing the time of the return is at most, in the Court's view, a technical or ministerial defect which does not warrant suppression.  The Court's decision is supported by both Kentucky and Sixth Circuit case law.  *See e.g. Commonwealth v. Hubble*, 730 S.W.2d 532, 533 (Ky. Ct. App. 1987) Rule 13.10 is procedural in nature and does not confer any new substantive rights upon defendants.  Accordingly, evidence obtained should not be suppressed unless the violation of the rule resulted in prejudice to the defendant); *Moore v. Commonwealth*, 268 S.W. 563 (Ky. 1925) (failure to make a return or the making of an improper return does not destroy the validity of the search if it was in fact conducted in a lawful manner); *See United States v. Dudek*, 530 F.2d 684, 688 (6th Cir. 1976) (even if the return is untimely, the failure

---

(3)     Warrant by Telephonic or Other Means. If a magistrate judge decides to proceed under Rule 41(d)(3)(A), the following additional procedures apply:

(D)     Signing the Original Warrant and the Duplicate Original Warrant. Upon determining to issue the warrant, the magistrate judge must immediately sign the original warrant, *enter on its face the exact time it is issued*, and direct the applicant to sign the judge's name on the duplicate original warrant.

to file a prompt return does not invalidate the search warrant or require suppression of any evidence obtained as a result of its); *Rose v. United States,* 274 F. 245, 250-51 (6th Cir. 1921) (making of the return is merely a ministerial act, to be performed after the warrant is executed, therefore the failure to make a return thereof cannot invalidate the search or seizure made by authority of such warrant), *cert. denied,* 257 U.S. 655 (1921). *See also United States v. McKenzie,* 446 F.2d 949, 954 (6th Cir. 1971) (noting that although important, the procedures required for execution and return of a search warrant, contained in Rule 41(d) of the Federal Rules of Criminal Procedure, are ministerial. Absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search); *United States v. Haskins,* 345 F.2d 111, 117 (6th Cir.1965) (return of a warrant is a ministerial act and any failure therein does not void the warrant).

In this case, whether the Court applies the Kentucky case law interpreting Rule 13.10, or the federal case law interpreting Federal Rule 41, Black has failed to demonstrate prejudice resulting from Detective Fegan's failure to indicate the time he made the return on June 22, 2005. Thus, suppression of the evidence seized pursuant to the warrant is not warranted on this basis.

The same can be said for Judge McNeill's failure to affix the time he signed the warrant on June 22, 2005. "Technical defects in a warrant do not call for or permit exclusion of what the search produces." *See United States v. Hornick,* 815 F.2d 1156, 1158 (7th Cir. 1987) (citing *United States v. Leon,* 468 U.S. 897 (1984)). Stated plainly, there is no federal constitutional requirement that a search warrant be affixed with the time of the judge's signature in order for the warrant to be valid. Even if there was such a requirement, the failure to do so in this case does not require exclusion of the evidence

seized pursuant to the warrant as Black has shown no prejudice by such failure.

Numerous federal decisions confirm that the alleged errors which occurred in this case are far less significant than those held by other courts not to warrant suppression. *See e.g., Hornick,* 815 F.2d at 1158 (the fact that federal warrant was authorized by a state rather than federal judge did not call for exclusion of evidence seized);  *United States v. Comstock,* 805 F.2d 1194, 1200 (5th Cir. 1986) (suppression not called for even though "search warrant was not issued by court of record as required by Rule 41(a)") *cert. denied,* 107 S.Ct. 1908 (1987), *United States v. Searp,* 586 F.2d 1117, 1122 (6th Cir. 1978) (suppression of evidence was not justified despite the fact that the warrant, in violation of Rule 41, did not authorize a night search and the affidavit "disclose[d] no facts which would justify such a search"), *cert. denied*, 440 U.S. 921 (1979); *United States v. Ravich,* 421 F.2d 1196, 1200-02 (2d Cir.) (same), *cert. denied,* 400 U.S. 834 (1970); *United States v. Ritter,* 752 F.2d 435, 440-41 (9th Cir.1985) ("purely technical violation of Rule 41 does not require the suppression of evidence");  *United States v. Burke,* 517 F.2d 377, 381-82 (2d Cir. 1975) (exclusion not required even though Rule 41 was not complied with in that the warrant was not directed to federal officers, did not require search within ten days, and did not designate a federal magistrate to whom return should be made).

For all of these reasons, and in view of the case law relied upon herein, the Court concludes there are no facial deficiencies in the warrant in this case.

26

**G.    Even if the Court were to conclude that the affidavit was defective for want of probable cause, the search of 318½ Plum Street, Maysville, Kentucky is saved via the *Leon* good-faith exception.**

In *United States v. Leon,* 468 U.S. 897 (1984), the Supreme Court modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905. *See also United States v. Czuprynski,* 46 F.3d 560 (6th Cir.1995) (en banc).  The *Leon* Court also held that the good faith exception to the exclusionary rule would not apply under the following circumstances, to wit: 1) when the search warrant was obtained in violation of *Franks v. Delaware,* 438 U.S. 154 (1978); 2) when the issuing magistrate has failed to act in a neutral and detached fashion; 3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or 4) when the warrant is so facially deficient (i.e., it fails to describe the particular place to be searched or the items to be seized) that the executing officers could not have reasonably presumed that it was valid.  468 U.S. at 923.

The Sixth Circuit has succinctly set forth the standard for determining whether the *Leon* exception applies:

> The good faith exception to the exclusionary rule states that the fruits of a constitutionally infirm search need not necessarily be suppressed unless: (1) the warrant contained a knowing or reckless falsehood; (2) the issuing judge acted as a mere "rubber stamp" for the police; or (3) the warrant and the affidavit, even after extending appropriate deference to the issuing judge's determination, did not establish probable cause or possessed a technical deficiency such that the executing officers cannot reasonably assume the warrant to be valid.

*United States v. Logan*, 250 F.3d 350, 366 (6th Cir. 2001) (*citing Leon*, 468 U.S. at 922-23). Although the Court is limited to the four corners of the affidavit in reviewing probable cause,

27

a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate.  *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005).

Although the Court has upheld the validity of the search warrant on all challenged grounds, (*See* Section III(A) through (F) *supra*), even if the Court were to have found the affidavit was lacking probable cause or the warrant facially deficient, the *Leon* good faith exception to the exclusionary rule would save the search.

In an effort to defeat any application of the *Leon* good faith exception to the exclusionary rule, Defendant argues that there is a "clear discrepancy in the times for the search warrant, the issuance of the arrest warrant and the arrest of the defendant."  When those discrepancies are combined with the issuing judge's failure to place a time on the search warrant and the affiant's failure to place a time on the search warrant inventory return, Defendant asserts that the officers could not have been acting in good faith in proceeding with the arrest of the defendant and the search of 318½ Plum Street.  The Court disagrees.

Although there is an obvious error regarding the state trial commissioner's misdating of the state arrest warrant as May 23, 2005, instead of June 23, 2005, that discrepancy is irrelevant is conducting the *Leon* good faith analysis.

In this case, Defendant Black was arrested at the Dutch Inn in Maysville by Kentucky Probation and Parole officers at approximately 5:05 p.m. on June 22, 2005.[12]  A search

---

[12]  The officers' good faith is further supported by the fact that Black's probation officers advised Judge McNeill of what they had been advised by Detective Fegan and were instructed by McNeill to arrest and detain Black for probation violations.

incident to that lawful arrest yielded approximately seven ounces of marijuana in Black's pocket. Black was thereafter taken into state custody.

After the discovery of the marijuana on Defendant's person, and in consideration of the other information in his possession from other officers as well as his own personal observations, Detective Fegan thereafter prepared an affidavit and application for a search warrant for 318½ Plum Street, Maysville, Kentucky. The warrant was ultimately reviewed by Judge McNeill and signed by him at 5:40 p.m. Fegan personally witnessed McNeill sign the search warrant. Fegan thereafter proceeded to 318 ½ Plum Street to execute the warrant.

The post-arrest conduct of the officers does not alter the Court's *Leon* good faith analysis. Because Black's probation officers and the jail informed Detective Fegan that Black would be held on the probation violation warrant and would not be released, Fegan waited until the following day to file a criminal complaint against Black based on the June 22, 2005 conduct. At approximately 11:08 a.m. on June 23, 2005, Fegan swore out a Criminal Complaint charging Black with trafficking in marijuana and cocaine and requested an arrest warrant. It is undisputed that the warrant was erroneously dated as May 23, 2005, rather than June 23, 2005. Detective Fegan thereafter served the warrant on Black at the Mason County Detention Center at 3:25 p.m. on June 23, 2005.

The state Trial Commissioner's error in recording the wrong date on the state arrest warrant has no impact on the Court's *Leon* analysis. Despite Defendant's attempts to characterize the conduct of the officers as not acting in good faith, the record reveals otherwise. Additionally, Judge McNeill's failure to affix the time he signed the search warrant and Detective Fegan's failure to affix the time he made the return are ministerial

acts which have no significance in assessing the officer's good faith.

In this case, there is simply no credible evidence that the affidavit contained a knowing or reckless falsehood, that Judge McNeill was not a detached decision-maker, or that the warrant and affidavit were so deficient that the executing officers could not reasonably assume the warrant to be valid.  The officers who executed the search warrant acted in good faith reliance on Judge McNeill's neutral and detached determination of probable cause.  Finally, there is nothing to suggest that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.

For all of these reasons, and assuming *arguendo* that the warrant was otherwise deficient, exclusion of the evidence seized by the officers during its execution is not necessary because it is obvious to the Court that they acted in good faith throughout.

Therefore, for the reasons stated herein,

**IT IS ORDERED** that the video tape of the shock probation hearing held on August 27, 2004 shall be made part of the record in this case as Court Exhibit One;

**IT IS FURTHER ORDERED** that Defendant Black's Motion to Quash Search Warrant and to Suppress Evidence Seized Pursuant Thereto (Doc. # 39) be, and hereby is, **DENIED**.

This 17th day of January, 2006.



Signed By:

*David L. Bunning*   DB

**United States District Judge**